## Ben Krebs v. The State.

1. CONTINUANCE — SEVERANCE. — Two defendants, jointly indicted, applied for a continuance, and on the same day one of them, for the purpose of obtaining the testimony of the other, asked a severance, and filed his affidavit in compliance with the act of 1874. The court below first granted the severance, and then granted the continuance as to the defendant whose testimony was the object of the severance, and, refusing a continuance to the other, put him upon trial. *Held*, that the motion for continuance should have been first acted on ; and that the defendant, forced to trial, was deprived of the legal right, secured to him by the act of 1874, of having his co-defendant tried first, with the view of obtaining his testimony.

2. CONTINUANCE. — When two defendants, jointly indicted, apply for a continuance, if the application is held good as to either, the continuance should be granted to both.

3. MURDER — EVIDENCE. — The defendant being on trial for the murder of one E., counsel for the state asked the state's witnesses whether or not other persons were found dead at the time and place the body of E. was found. Defendant objected to the question because he was only indicted for the murder of E., and not of any others who may have been killed in the same onset. *Held*, that there was no error in allowing the question. It tended to elicit evidence of *res gestæ*, the whole of which was competent to go to the jury.

4. SAME — DYING DECLARATIONS, if predicated as required by the Code, are evidence in cases of homicide only, and only when the homicide of the declarant is the crime charged   They are not evidence when the crime charged is the homicide of any one other than the declarant, even though such other and the declarant were killed in the same onset, and were husband and wife.

5. SAME. — At the time such declarations were made, the declarant must not only have been in a dying condition, but must also have actually believed himself so to be. Such belief, however, may be inferred from his statements, and also from the nature of his wound and other circumstances; and it is not necessary he should believe that his death will ensue within any specific time.

6. TRANSCRIPT — FILE-MARKS. — When the court has charged the jury, the charge should be handed to the clerk, who, before handing it to the jury, should put his file-mark on it; and the transcript, on appeal, should show the file-marks on the charge, and on all other file-papers in the cause.

7. VERDICT. — "We, the juror, find the defendant guilty, and sess his punishment deth," however obnoxious in spelling and style, is an intelligible verdict in a murder case; but it will not support a judgment, inasmuch as

it fails to show of what degree of murder the defendant is found guilty. The statutory requirement to that effect, whatever its object, must be observed and enforced.

8. THE purposes of justice are best subserved and most speedily attained by adhering to well-established principles of law, and conforming strictly to the requirements of the statutes.

APPEAL from the District Court of Montague. Tried below before the Hon. J. A. CARROLL.

In the case of *Taylor* v. *The State*, reported at page 169 of the present volume, will be found a full detail of the evidence in respect of the horrible atrocity out of which originated that, as well as the present, prosecution. The evidence in the two cases being substantially, and for the most part literally, the same, there is no necessity to reiterate it here.

The material difference between the two cases, and one which, as will be seen from the opinion, involves very important legal results, consisted in the difference in the indictments — that against the present appellant and James Preston being for the murder of William England, whereas Taylor was separately indicted for the murder of William England's wife, whose dying declarations are the most conspicuous feature in both records, and who was mortally wounded in the same midnight slaughter which hurried two of her children and her husband to instant death.

The same questions respecting the special *venire* and the organization of the jury which were raised in the case of Taylor were also raised in the present case; but, having been so fully and recently considered in the former case, are not discussed in the opinion now reported.

The records and briefs in both cases attest the signal ability with which counsel for the state and for the accused have contested them in both courts.

*Grigsby & Willis*, for the appellant. The indictment

charges Krebs with the murder of William England, and there is no allegation in it charging him with the killing of any one else; and it was error to permit the witnesses for the state to testify that Isaiah Taylor and Susie Taylor were killed. If other persons were killed, the indictment should have alleged that fact, and without such averment the proof should have been excluded. The production of evidence to the jury is governed by certain principles, and the first of these is that the evidence must correspond with the allegations and be confined to the point in issue. 1 Greenl. on Ev., sec. 50. "The chief thing to be avoided, down to the time when the government rests its case, and the defense is called for, is to prevent prejudice to the defendant, in the eyes of the jury, by bringing against him testimony tending to show crimes for which he is not really indicted, and to which he is not finally to make answer in the cause, contrary to the well-known rule of evidence that one offense shall not be shown against a prisoner as foundation on which they are to build the inference of his having committed another offense." 1 Bishop's Cr. Proc., sec. 213.

The declarations of Susie Taylor, testified to as a part of Selina England's dying declarations, were not competent evidence, and should not have been admitted. The indictment does not charge Krebs with the murder of Susie Taylor, nor was Krebs on trial for killing her; consequently her declaration as to who did the killing ought not to have been given in evidence against Krebs. If Selina England had been on the witness-stand herself, she could not have legally testified to what Susie Taylor said about the killing, and the fact that it was her dying declaration did not change its legal effect and make it competent. It was at most but hearsay evidence, and it should have been excluded on that ground.

It was error to admit the testimony of Harvey Taylor

concerning a difficulty between Krebs and William England (the deceased), which took place some time before England was killed. If such difficulty occurred as the witness stated, upon what ground was it competent evidence against Krebs in this case? It was evidence of another crime than the one charged in the indictment, and cannot, under any rule of evidence that we are aware of, be brought forward against Krebs. "For a reason similar to that which precludes the government from introducing evidence of the bad character of the prisoner, as foundation on which to raise the presumption of his guilt in the particular case, evidence also of another crime than the one charged is not permitted to be brought forward against him. It is even not permissible, as a general rule, to show that the defendant has committed other crimes of the same kind as the one for which he is being tried; as, for instance, if he is being tried for larceny, to show that he has committed, at other times and places, other and disconnected larcenies; or, for riot, to show that he had been engaged in other riots; or, for the murder of a particular person by poison, to show the poisoning of another person at another time and place. Much less is it permissible to show a different sort of crime committed by the prisoner; as, on a trial for murder, to produce particular instances in which the defendant has had differences with persons other than the deceased, or a particular instance in which he set fire to the house of the deceased in the night-time," etc. 1 Bishop's Cr. Proc., sec. 490; *United States* v. *Mitchell*, 2 Dall. 348; *Barton* v. *The State*, 18 Ohio, 221; *Cole* v. *The Commonwealth*, 5 Gratt. 696; *Regina* v. *Butler*, 2 Car. & Kir. 221; 2 Cox C. C. 132; *The State* v. *Renton*, 15 N. H. 169; *Farrer* v. *The State*, 2 Ohio St. 54; *Ogletree* v. *The State*, 28 Ala. 693; *Gordon* v. *The State*, 3 Iowa, 410; *Stone* v. *The State*, 4 Humph. 27. In the last case above cited, Turley, J., said: "It is now objected that, this being a substantive

felony, the proof going to establish it is illegal. And of this there can be no doubt, upon well-settled principles '' (p. 35). Testimony of the prisoner's guilt or participation in the commission of a crime wholly unconnected with that for which he is put on his trial cannot, as a general rule, be admitted. *Dunn* v. *The State*, 2 Ark. 229; *The Commonwealth* v. *Call*, 21 Pick. 515.

Jonathan Stroud, a witness for the state, testified to threats made by Krebs against Isaiah D. Taylor some time before William England was killed. Krebs is not charged in the indictment with killing Isaiah D. Taylor, and we fail to see the relevancy of this testimony. " Under an indictment for an assault on A, with intent to murder, the defendant's threats, made several hours previous to the fight, that he would kill B, are not admissible in evidence against him." *Ogletree* v. *The State*, 28 Ala. 693. " A person accused before a jury has the right to be protected from undue prejudice excited by evidence foreign to the direct point in issue." 1 Bishop's Cr. Proc., secs. 213, 491. Such testimony of threats made by Krebs against Taylor, not named in the indictment, was certainly not admissible to show malice against the deceased, William England, nor was it competent for any other purpose in this case.

The evidence as to what James Preston and A. K. Taylor did should not have been given to the jury in this case. James Preston was not on trial, and A. K. Taylor is not named in this indictment at all. The evidence against both of them should have been excluded on the trial of Krebs; and especially the evidence against Taylor was not competent, because, for aught that appears from the record in this case, he is not charged with the killing of William England; at any rate this indictment does not charge him with said killing.

We now desire to call the attention of the Court of Ap-

peals to the dying declarations of Mrs. Selina England. Her dying declarations and the circumstantial evidence were all the state introduced to hinge a conviction upon; and there was no legal foundation laid by the state for the admissibility of these dying declarations, as the law imperatively requires. We beg leave to call the court's attention to the entire foundation that was laid by the state to admit Selina England's dying declarations. The witnesses who testified to those declarations were E. T. Van Hooser, A. L. Matlock, and Dr. Stinson. In regard to the predicate, Mr. Van Hooser says: "She was in her right mind, and said she was bound to die. She said nothing to me about who done the killing till I asked her who did the killing. I asked her if she knew who had shot her." Dr. Stinson says: "She was mortally wounded and perfectly conscious of the fact that she would die. I talked with her, and found her perfectly rational. She then proceeded to say, 'I know that I must soon die, and I want to tell you all about it.'" Mr. Matlock says: "She was perfectly rational, and knew me and all about what was passing, and told me that she knew she was going to die. Mrs. England was perfectly rational, and talked voluntarily about the murders." Not one of these witnesses (and they are the only ones that testified as to the dying declarations) said "that at the time of making such declarations she was conscious of approaching death, and believed there was no hope of recovering." For the witnesses to say that she was "rational, and said she was bound to die," or, as Dr. Stinson stated it, "I know that I must soon die, and I want to tell you all about it," are not statements sufficient to lay the statutory foundation for Selina England's dying declarations.

Admitting these declarations without the foundation being laid which the law requires was a material error, calculated to injure the rights of the defendant. Besides, the entire record may be searched from the beginning to the end, and

it will nowhere appear that Selina England has ever died; not a witness has said so in the entire statement of facts. If she is still living, her declarations are by no means admissible; we cannot presume that she is dead, and thereby render her declarations competent, for the humane principles of the law will not permit us to indulge in any such violent presumptions in capital cases. Because of these errors the court should have sustained Krebs' motion for a new trial.

The verdict is ambiguous, informal, and meaningless in its terms, and does not warrant the pronouncing of the sentence of the death penalty thereon.

The verdict reads: " We, the juror, find the defendant guilty, and sess his punishment deth." This verdict does not find the defendant guilty *as charged in the indictment;* it does not find him guilty of *murder in the first degree;* nor does it find him guilty of *murder* at all.

" The court cannot look to the proofs or the charge to ascertain what the jury intended. To aid the verdict by a resort to such sources of information would be a departure from all the principles regulating the subject." *Slaughter* v. *The State,* 24 Texas, 415. The indictment against Slaughter charged him with murder in the usual forms, and the jury returned the following verdict: " We, the jury, find the defendant guilty, and assess the punishment at confinement in the state penitentiary for the term of twelve months." And this verdict the court held insufficient to support the judgment under the Code of Criminal Procedure. *Buster* v. *The State,* 42 Texas, 318; *Slaughter* v. *The State,* 24 Texas, 410.

In *Buster* v. *The State,* 42 Texas, 315, the court say: " To support the judgment, the court must be able to see from the verdict of ' guilty,' returned by the jury, that it authorizes and requires the assessment of a penalty affixed by law, or that the penalty assessed by the jury is warranted by law; and also that the jury are not mistaken

in the character or degree of the offense of which they have, in fact, found the defendant guilty, and imposed a penalty not affixed to it by law.    How can the court know this, unless the verdict finds the offense, or its degree, as well as the penalty?    It is but arguing in a circle to say that the jury have found the defendant guilty of murder in the first degree because they have fixed the penalty at death.    *    *    *
Unless the defendant is found guilty of murder in the first degree, the court, as we have said, cannot say that they have not assessed a penalty not warranted.    To guard against the possibility of such a result, and to prevent the commutation by juries of the penalty fixed by law, had, no doubt, great force in inducing the Legislature to require juries to find the degree of the offense in their verdicts, as well as to assess the penalty in those cases in which this duty is confided to them."

*George McCormick,* Assistant Attorney General, for the State.    Would the continuance of a case as to the defendant, whose testimony was desired by a co-defendant, of itself work a continuance of the cause as to such party desiring the severance?

Upon reason and common sense I think not.    The law is plain ; its words are not ambiguous.    The severance is only allowed at the *trial,* and where two or more parties are *jointly prosecuted.*

If, after the severance, the party whose testimony is desired should continue his case, then I submit that the party who desired such evidence should make that a ground for continuance, and that his motion should be governed by the statute ; he should set out in his affidavit the facts, and inform the court of the facts which he expected to prove by such party, *and they should appear to be material;* otherwise he is not entitled to a continuance.    The statute has pre-

scribed the necessary prerequisites in applications for continuance; and these must be strictly followed, or the refusal of the court to grant such motion will not be revised.

The act allowing a severance does not establish a new ground for continuance. The rule remains as before. When a party desires to continue his cause, the reasons must be given in an affidavit; and if for the absence of witnesses or to procure testimony, the materiality of the evidence sought must appear from the affidavit, and that the application is not made for delay; and nothing is presumed in favor of such application. *Cantu* v. *The State*, 1 Texas Ct. App. 402; *Bruton* v. *The State*, 21 Texas, 337; *Wright* v. *The State*, 44 Texas, 640; *Brown* v. *The State*, 34 Texas, 186.

If this court should hold that the mere affidavit of appellant herein that he desired the testimony of his co-defendant, Preston, and that he did not believe there was any evidence against Preston, should work a continuance of the cause until Preston was tried, without any further statement showing the materiality of such evidence, then I submit that a new reason for continuances will be opened up — one not contemplated in Paschal's Digest, articles 2987, 2988, etc.

ECTOR, P. J.    Ben Krebs and James Preston were jointly indicted in the District Court of Montague County for the murder of William England, charged to have been committed on August 26, 1876. The case was tried at the October term, 1876, of said court.

On November 9, 1876, the defendant Krebs filed an application for a severance, which was properly sworn to by him. In it he stated that " a severance in this cause is requested for the object of obtaining the evidence of James Preston, who is jointly indicted with affiant (Krebs); that such evidence is material for his, affiant's, defense; and

that affiant verily believes there is no evidence against the said James Preston; therefore affiant asks that James Preston be tried first."

On the same day defendants, Krebs and Preston, filed a joint application for a continuance of the cause. The court, as appears from the transcript, acted on the application for a continuance the day it was filed, and granted it as to the defendant Preston, and overruled it as to the defendant Krebs. Krebs was ordered by the court to be placed on trial; to which ruling of the court he duly excepted.

On the next day, to wit, on November 10, 1876, as shown by the minutes of the court as copied in the transcript before us, the defendant's motion for a severance was acted on by the court. We copy the following as a portion of said minutes: "And the defendant Krebs demands a severance, and the court, after being fully advised in the premises, is of opinion that the law is for defendants. It is, therefore, ordered, adjudged, and decreed by the court that the parties in the above cause be allowed to sever."

The bill of exceptions number 1, taken by the defendant, states that the court first acted on defendant Krebs' application for a severance, granted the same, and ruled that Preston should be first tried; that thereupon the defendants both applied for a continuance of the cause, which was granted as to Preston and overruled as to Krebs, who was then placed upon his trial; to which said order, and placing Krebs upon his trial, and not trying Preston first, Krebs excepted, as appears by his bill of exceptions; Krebs claiming that, a severance having been once allowed, and the defendant Preston ordered to be first tried, a continuance of the cause as to Preston, under the law, necessarily and legally continued the cause against him (Krebs); that, by placing Krebs upon trial first, the object sought by said severance was and is defeated, to wit, the procuring of Preston's testimony on the trial.

We believe that the court should have first acted on the motion for a continuance, before taking up defendant Krebs' application for a severance. The statute never contemplated that an application for a severance should be heard before a motion for continuance. When two or more defendants are jointly indicted, and have announced ready for trial, they may sever on the trial. Article 587 of the Criminal Code, as it was originally passed, read as follows : "When two or more defendants are jointly prosecuted, they may sever on the trial, at the request of either." Before this article was amended and a severance was granted, the practice was to allow the state's attorney to elect the defendant he would first put on trial.

This article was amended by the act of March 16, 1874 (Gen. Laws 1874, p. 29, ch. 30), so as to read as follows : "Art. 587. When two or more defendants are jointly prosecuted, they may sever in the trial, at the request of either ; and, if the defendant upon whose application the severance is allowed shall file his affidavit stating that a severance is requested for the object of obtaining the evidence of one or more of the persons jointly indicted with him, that such evidence is material for his defense, and that he verily believes that there is no evidence against the person or persons whose evidence is desired, such person or persons shall be first tried."

Upon an examination of defendant Krebs' application for a severance, we find that it strictly conforms to the requirements of said article 587 as amended, and, under the law, the action of the court in putting Krebs on trial first, we believe, deprived him of a clear legal right.

When two defendants are jointly indicted, and an application for a continuance is made by one of them, if the application is sufficient as to one of them, it operates a continuance as to all of them. The pleader could always obviate this by drawing separate bills of indictment against

each defendant. Far be it from us to reflect upon the county attorney for doing otherwise in this instance; for his conduct cannot be too highly commended for trying to ferret out the guilty parties, and leaving nothing undone which in his judgment he believed necessary to enforce the law.

The court did not err in permitting the witnesses for the state to testify that other members of William England's family were killed at the same time that he was. There is no rule of evidence which would exclude from the jury all that was said and done, on the occasion of the killing, which is connected with, and a part of, the same entire transaction. 1 Whart. Cr. Law, sec. 649.

It is insisted that the court erred in permitting the " dying declarations of Mrs. Selina England to go to the jury; that there was no such legal foundation laid by the state, for the admissibility of these dying declarations, as the law imperatively requires."

" The dying declarations of a deceased person may be offered in evidence either for or against a defendant charged with the homicide, under the restrictions hereafter provided. To render the declarations competent it must be satisfactorily proved (1) that at the time of making such declarations he was conscious of approaching death, and believed there was no hope of recovery; (2) that the declaration was voluntarily made, and not through persuasion of any person; (3) that such declaration was not made in answer to interrogatories calculated to lead the deceased to make any particular statement; (4) that he was of sane mind at the time of making the declaration." Pasc. Dig., art. 3125.

We think it was satisfactorily proved that, at the time the statements of Mrs. Selina England which were testified to by certain of the state's witnesses were made, she was conscious of approaching death, and believed there

was no hope of recovery. We also believe that these statements were voluntarily made by her, and not through the persuasions of any person, and not in answer to interrogatories calculated to lead her to make any particular statement; and that she was then of sane mind.

In order to make dying declarations admissible in evidence the deceased must not only be in a dying condition, but he must actually believe that he is so. This belief may be inferred from the statement of the party, and also from the nature of the wound and other circumstances. It is not necessary that such apprehension of death should be in a certain number of hours or days. It is proper we should here state that it only appears inferentially from the record that Mrs. Selina England was dead at the time of the trial. The dying declarations of a party are only admissible in evidence, on a trial *of a homicide, where the death of the deceased is the subject of the charge, and the circumstances of the death are the subject of the dying declarations.* 1 Greenl. on Ev. 156; *Lambeth* v. *The State,* 23 Miss. 323; Whart. Cr. Law, sec. 675; Roscoe's Cr. Ev. 31, and authorities cited; Stark. on Ev. 32; *Wright* v. *The State,* 41 Texas, 246.

It is not insisted by the prosecution that the declarations of Mrs. England constituted any part of the *res gestœ.* Dying declarations are restricted to cases of trial for the homicide of the declarant. In this case, the death of William England being the subject of the charge, the " dying declarations " of his wife were improperly admitted in evidence.

We find no error in the charge of the court. There is nothing in the record, however, to show that it was ever filed among the papers of the cause by the clerk. When the court has charged the jury, the charge should first be handed to the clerk, and by him be filed, before it is handed to the jury; and the transcript should show the date of its filing in every criminal case. See the case of Charles

Haynie and authority cited, decided by this court during the present Tyler term, 1877, on this point, *ante*, 223.

The verdict of the jury is as follows : " We, the juror, find the defendant guilty, and sess his punishment deth." The jury were polled, and, when called, each juror announced separately to the court that the above was his verdict. The verdict is not artistically drawn, and is not a good specimen " on a question of orthography ; " still it can be understood, and is intelligible. " Bad spelling does not vitiate a verdict when it has the requisites of being certain and intelligible." *Koontz* v. *The State*, 41 Texas, 571.

The defendant, in his motion in arrest of judgment, suggests to the court that judgment in said case cannot be legally rendered against him upon the verdict, and that it does not warrant the pronouncing of a sentence of the death penalty, etc. Article 2268 of our Criminal Code (Pasc. Dig., art. 2268) provides : " If the jury shall find any person guilty of murder, they shall also find by their verdict whether it is of the first or second degree, and, if any person shall plead guilty to an indictment for murder, a jury shall be summoned to find of what degree of murder he is guilty ; and in either case, if they find the offense of murder to be of the second degree, they shall find the punishment." The verdict in this case finds the defendant guilty, but does not find whether it is of the first or second degree, and is, therefore, insufficient to support the judgment. Whatever object the Legislature had in enacting said article 2268, it is plainly written in the Code ; and until it is altered or repealed it is the duty of the courts to observe and enforce it.

In the case of *Buster* v. *The State*, 42 Texas, 315, in which the defendant was on trial for murder, the jury returned the following verdict : " We, the jury, find the defendant guilty as charged in the indictment, and assess his punishment to be hung by the neck until dead." Our Supreme Court say such a verdict is insufficient to support

a judgment.    In the case cited the indictment charged the defendant with murder in the first degree.    See, also, the case of *Colbath* v. *The State*, decided by this court at the Austin term, 1877, in which it was held that a similar verdict would not support a judgment.    2 Texas Ct. of App. 391.

We have not deemed it necessary to notice all the points made by counsel in behalf of the accused.    Our experience teaches us that often in the plainest cases the courts of the country, in their zeal to punish crime, deprive defendants of legal rights.    Such haste too often delays, instead of advancing, the ends of justice.    The substantial purposes of justice are best subserved by adhering strictly to technical long and well-established rules, and to the plain requirements of the statutes.

*Reversed and remanded.*